UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRINA M. SEARCH, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | C12-52 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on defendant's motion to dismiss, docket no. 24, plaintiff's amended complaint, docket no. 20. Having reviewed all papers filed in support of, and in opposition to, defendant's motion, the Court enters the following order.

**Background**

In 2007, plaintiff Trina M. Search obtained a "gold" credit card through defendant Bank of America, N.A. ("BANA"). *See* Search Decl. at ¶ 2 (docket no. 37). The related Credit Card Agreement lists four categories of annual percentage rates: (i) Category A for balance transfers and check cash advances; (ii) Category B for automated teller machine ("ATM") cash and bank cash advances; (iii) Category C for purchases; and (iv) Category D for other balances. *See* Credit Card Agr. at 19-22, Ex. A to Amended

ORDER - 1

Complaint (docket no. 20-1 at 10-12).[1]  With regard to each category, the Credit Card Agreement identifies a "current" corresponding annual percentage rate ("APR").  <u>Id.</u>  For Categories A and C, the current APR was 0% through the statement closing date in November 2007, which was the end of the promotional period.  At the end of the promotional period, the APR became a variable rate "with a margin of 7.99 percentage points" above the index, which is the highest U.S. Prime Rate published in the <u>Wall Street Journal</u>, resulting at the time in an APR of 16.24%.  <u>Id.</u>  Categories B and D did not have promotional periods, and the "current" APRs for those categories were 24.24% and 16.24%, respectively.  <u>Id.</u>

       The Credit Card Agreement begins with a table of contents, which indicates that the subject "WE MAY AMEND THIS AGREEMENT" begins on page 37.  On such page, the Credit Card Agreement contains the following language:

> **WE MAY AMEND THIS AGREEMENT**
>
>        We may amend this Agreement at any time.  We may amend it by adding, deleting, or changing provisions of this Agreement.  We may increase or decrease any or all of your APRs.  We may increase any or all of your APRs to rates which exceed the Default Rate.  When we amend this Agreement we will comply with the applicable notice requirements of federal and Delaware law that are in effect at that time.  The amended Agreement (including any higher rate or other higher charges or fees) will apply to the total outstanding balance, including the balance existing before

---

[1] Plaintiff's motion to strike, docket no. 36, the copy of the Credit Card Agreement attached as Exhibit 1 to the Affidvait of Jeffrey Cooney, docket no. 25, is DENIED.  The copy attached to Mr. Cooney's affidavit differs from the version appended to plaintiff's complaint in only one regard, namely each page of the Credit Card Agreement appears individually, rather than being grouped in pairs.  In her motion to strike, plaintiff complains that page 9, referenced by BANA in its briefing, does not contain a reservation of right to amend the Agreement; BANA's citation, however, is to page 9 of docket no. 20-1, which is Exhibit A to plaintiff's amended complaint, on which appears page 16 of the Credit Card Agreement, setting forth the "right to change the terms" of the Agreement.

ORDER - 2

    the amendment became effective.  If an amendment gives you the
    opportunity to reject the change, and if you reject the change in the manner
    provided in such amendment, we may terminate your right to receive credit
    and may ask you to return all credit devices as a condition of your rejection.
    We may replace your card with another card at any time.

*Id.* at 37-38 (docket no. 20-1 at 19-20).  The Credit Card Agreement also states in bold letters:  "**We reserve the right to change the terms of this Agreement at any time, as further described in the following sections:** *Balance Categories* **and** *We May Amend This Agreement*."  *Id.* at 16 (docket no. 20-1 at 9).

    In October 2008, the Credit Card Agreement was amended to specify an APR for Categories A, B, and C of 25.24%.[2]  Ex. B to Amended Complaint (docket no. 20-1 at 25).  Plaintiff was provided an opportunity to opt out of the APR increase by rejecting it in writing and refraining from using the credit card after the statement closing date in September 2008.  *See* Ex. 2 to Cooney Aff. (docket no. 25-1 at 51).  Plaintiff does not recall receiving notice of the APR increase.  Search Decl. at ¶ 2 (docket no. 37 at 2).  Plaintiff does not dispute that she continued to use the credit card after the statement closing date in September 2008, and she asserts that, on December 7, 2009, she attempted to use the credit card at a local restaurant, but was informed by the merchant that the

---

[2] In her declaration, plaintiff indicates that the new APR was 24.99%.  Search Decl. at ¶ 2 (docket no. 37 at 2).  This statement is inconsistent with the document attached as Exhibit B to the amended complaint, which sets forth an APR of 25.24%.  Plaintiff's motion to strike, docket no. 36, the version of this same document that was submitted as Exhibit 2 to Mr. Cooney's affidavit, docket no. 25, is DENIED.  The copy attached to plaintiff's amended complaint is incomplete, providing only page 1 of 3; the missing two pages are attached to Mr. Cooney's affidavit and will be considered by the Court.

ORDER - 3

account had been closed and the restaurant would not accept the credit card for payment. <u>Id.</u> at ¶ 4.[3]

Plaintiff initiated this action in Snohomish County Superior Court on September 16, 2011. <u>See</u> Ex. A to Verification of State Court Records (docket no. 11). The case was timely removed by BANA in January 2012. <u>See</u> Notice of Removal (docket no. 1). In February 2012, plaintiff filed the amended complaint that is now the operative pleading in this matter. In the amended complaint, plaintiff asserts eight causes of action: (i) absence of contract - illusory promises; (ii) violation of Washington's Constitution; (iii) violation of Fourteenth Amendment to United States Constitution; (iv) breach of contract and covenant of good faith and fair dealing; (v) violation of Washington's Consumer Protection Act; (vi) fraud and/or constructive fraud; (vii) APR limited under 12 U.S.C. § 85; and (viii) breach of contract for canceling credit card without notice. BANA has moved to dismiss all of plaintiff's claims.

**Discussion**

**A.      Standard for Motion to Dismiss**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and

---

[3] In support of its motion to dismiss, BANA has offered a letter dated December 4, 2009, advising plaintiff that her account was scheduled to expire soon and would not be renewed. Ex. 7 to Cooney Aff. (docket no. 25-1 at 66-67). Plaintiff's motion to strike, docket no. 36, this exhibit is GRANTED. The parties do not dispute that, in December 2009, plaintiff's credit card account was closed, and the reasons for such termination and whether and when plaintiff received written notification thereof are not relevant to the issues currently before the Court. The Court therefore DECLINES to consider Exhibit 7, which plaintiff claims not to have received, in light of Federal Rule of Civil Procedure 12(d), which provides that, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment."

ORDER - 4

contain more than a "formulaic recitation of the elements of a cause of action." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  The complaint must indicate more than mere speculation of a right to relief.  <u>Id.</u>  When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  <u>Id.</u> at 558.  A complaint may be lacking for one of two reasons:  (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim.  <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief.  <u>Twombly</u>, 550 U.S. at 570.  If the Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000).

B. **Constitutional Claims**

Plaintiff has provided no substantive response to BANA's motion to dismiss her constitutional claims.  Moreover, she appears to have taken no steps, pursuant to Federal Rule of Civil Procedure 5.1, to notify the Attorney General of Delaware that she is questioning the constitutionality of a Delaware statute.  Having studied the allegations of the amended complaint, the Court cannot see any merit or potential merit to plaintiff's assertion that Delaware's statute authorizing a bank to amend an agreement governing a revolving credit plan violates Article I, Section 12 of Washington's Constitution and/or

ORDER - 5

the Fourteenth Amendment to the United States Constitution.  See Rockwell v. Chase, 2011 WL 2292353 at *11 n.20 (W.D. Wash. June 7, 2011) (observing that Del. Code Ann. tit. 5, § 952 passes muster under rational basis review).[4]  BANA's motion to dismiss is therefore GRANTED as to plaintiff's constitutional claims, and plaintiff's second and third causes of action are DISMISSED with prejudice.

C.   **Statutory Claims**

   1.   **Consumer Protection Act**

To establish a violation of Washington's Consumer Protection Act ("CPA"), a private plaintiff must prove:  (i) the defendant engaged in an unfair or deceptive act or practice; (ii) such act or practice occurred within a trade or business; (iii) such act or practice affected the public interest; (iv) the plaintiff suffered an injury to his or her business or property; and (v) a causal relationship exists between the defendant's act or practice and the plaintiff's injury.  Robinson v. Avis Rent A Car Sys., Inc., 106 Wn. App. 104, 113, 22 P.3d 818, 823 (2001).  A plaintiff can establish that a trade practice is per se unfair or deceptive by showing it violates a regulation or statute defining such practice as unfair or deceptive.  See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 786, 719 P.2d 531, 535 (1986); see also Panag v. Farmers Ins. Co., 166 Wn.2d 27, 37 n.3, 204 P.3d 885, 889 n.3 (2009).  In the alternative, a plaintiff can

---

[4] Plaintiff's motion to strike, docket no. 36, BANA's citations to unpublished district court decisions is DENIED.  Ninth Circuit Rule 36-3 and Federal Rule of Appellate Procedure 32.1, on which plaintiff relies, do not govern in this Court or this District.  Moreover, even if such rules applied, reference to the opinion in Rockwell would be permitted because it was issued after January 1, 2007, and is available in at least one publicly accessible electronic database, namely Westlaw.

ORDER - 6

demonstrate that a trade practice is unfair or deceptive by proving it had the "capacity to deceive a substantial portion of the public." *Hangman Ridge*, 105 Wn.2d at 785, 719 P.2d at 535.

In response to BANA's motion to dismiss, plaintiff cites to 15 U.S.C. § 1666i-1, a provision of the Credit Card Accountability Responsibility and Disclosure Act of 2009 ("Credit CARD Act"). Plaintiff appears to contend that violation of the Credit CARD Act constitutes a per se violation of Washington's Consumer Protection Act ("CPA"). She does not, however, cite any authority to support the proposition that Washington's legislature has declared a violation of this federal statute to be a per se unfair trade practice. *See Hangman Ridge*, 105 Wn.2d at 786-87 (allocating to the legislature the responsibility for defining per se violations of the CPA). Moreover, she fails to explain how BANA could be found to have violated the Credit CARD Act when the provision at issue did not become effective until February 22, 2010, *see* Pub. L. No. 111-24, § 3, 123 Stat. 1734 (2009), but the APR increase about which plaintiff complains occurred in October 2008. *See Rockwell*, 2011 WL 2292353 at *9 (concluding that the Credit CARD Act did not apply to interest rate change implemented before the effective date of the statute).

To the extent plaintiff is advancing a theory that BANA's actions, although not per se violations of the CPA, had the "capacity to deceive a substantial portion of the public," plaintiff's amended complaint is not sufficiently pleaded. She fails to explain how a large segment of the population might have been misled by the repeated discussion in the Credit Card Agreement of BANA's authority to unilaterally modify any term, including

ORDER - 7

the APR.  She also fails to explain how a significant number of people could have read and understood the Credit Card Agreement, but then have formed an inconsistent expectation that the APR, which is by definition a variable rate, would remain stable or that, when the APR was increased (or decreased), the new rate would not apply to the then-existing balance.  The Court is satisfied that, given the language of the Credit Card Agreement, allowing plaintiff to amend her CPA claim would be futile.  BANA's motion to dismiss plaintiff's CPA claim is GRANTED, and plaintiff's fifth cause of action is DISMISSED with prejudice.

### 2. Rate Under 12 U.S.C. § 85

Plaintiff alleges that the APR should have been or was limited to 7%, citing 12 U.S.C. § 85, which provides in relevant part:  "Any [national] association may . . . charge on any loan . . . interest at the rate allowed by the laws of the State . . . where the bank is located . . . .  When no rate is fixed by the laws of the State, . . . the bank may . . . charge a rate not exceeding 7 per centum . . . ."  Plaintiff contends that Delaware has not fixed a rate of interest because its statute allows a bank to "charge and collect periodic interest under a revolving credit plan on outstanding unpaid indebtedness . . . at such . . . rate or rates as the agreement governing the plan provides."  Del. Code Ann. tit. 5, § 943.  Plaintiff's argument was rejected by the United States Supreme Court over a hundred years ago.  *See Daggs v. Phoenix Nat'l Bank*, 177 U.S. 549 (1900).  In *Daggs*, a similar law of the then Territory of Arizona, which allowed parties to "agree in writing for the payment of any rate of interest," was construed as "fixing" a rate within the meaning of 12 U.S.C. § 85 (then codified as Rev. Stat. § 5197).  *Id.* at 554-55.  The Supreme Court

ORDER - 8

explained that, for purposes of § 85, "fixed by the laws" means "allowed by the laws," and not a rate expressed in the laws. *Id.* at 555. The intention of § 85 was to adopt the state law and "permit to national banks what the state law allows to its citizens and to the banks organized by it." *Id.* Delaware's statute "fixes" a rate, namely the one set forth in the parties' agreement, and the default rate of 7% specified in 12 U.S.C. § 85 does not apply. BANA's motion to dismiss plaintiff's claim under 12 U.S.C. § 85 is GRANTED, and plaintiff's seventh cause of action is DISMISSED with prejudice.

### D. Common Law Claims

#### 1. Fraud Claims

The elements of fraud in Washington are: (i) representation of an existing fact; (ii) materiality; (iii) falsity; (iv) the speaker's knowledge of its falsity; (v) intent of the speaker that it should be acted upon by the plaintiff; (vi) plaintiff's ignorance of its falsity; (vii) plaintiff's reliance on the truth of the representation; (viii) plaintiff's right to rely upon it; and (ix) damages suffered by the plaintiff. *Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194, 204 (1996). Under Washington law, each element of fraud must be established by "clear, cogent, and convincing evidence." *Id.* The circumstances constituting fraud must be pleaded with particularity, but state of mind, *e.g.*, malice, intent, knowledge, may be alleged in general terms. Fed. R. Civ. P. 9(b).

Conduct that is not actually fraudulent, but "has all the actual consequences and legal effects of actual fraud," is considered constructive fraud. *Green v. McAllister*, 103 Wn. App. 452, 467, 14 P.3d 795 (2000). Under Washington law, constructive fraud is

ORDER - 9

defined as failure to perform an obligation, which is either a legal or equitable duty, not by an honest mistake, but by some "interested or sinister motive." _Id._ at 467-68.

In this case, plaintiff has not identified any statement of fact made by BANA in relation to her credit card that was materially false. Plaintiff also has not described any legal or equitable obligation that BANA failed to perform. Plaintiff describes BANA's actions as "baiting" her with no interest for a three-month period, followed by an APR of 16.24%, only to then double her rate.[5] Plaintiff also claims to have been unaware that BANA included a "change of terms" clause in the Credit Card Agreement. These allegations do not a fraud claim make. The Credit Card Agreement explicitly, in more than one way, and in more than one place, discloses that the APR may be increased at any time. To the extent plaintiff contends that BANA promised or should have provided a fixed APR, she offers no support for such proposition. Given the heightened pleading standard and burden of proof for fraud and the nature of plaintiff's claim, the Court is satisfied that amendment would be futile. BANA's motion to dismiss is therefore GRANTED as to plaintiff's fraud and constructive fraud claims, and plaintiff's sixth cause of action is DISMISSED with prejudice.

---

[5] Plaintiff does not appear to dispute that her APR actually decreased from 16.24% to 12.99% between November 2007 and June 2008. _Compare_ Def. Mtn. at 6:12-12 & n.4 (docket no. 24) _with_ Search Decl. at ¶ 2 (docket no. 37). Thus, plaintiff's bait-and-switch accusation against BANA seems misplaced.

ORDER - 10

### 2. Contractual Claims

#### a. Annual Percentage Rate

With regard to the increase in her APR, plaintiff presents three different contract-based theories of relief. First, she contends that the reservation of right to amend the Credit Card Agreement rendered the contract illusory and unenforceable. Second, she asserts that the Credit Card Agreement is unconscionable under Washington law. Finally, she argues that altering the APR was a breach of the implied covenant of good faith and fair dealing. With regard to the first two theories, the Court agrees with the reasoning in *Rockwell*, which addressed similar claims raised against a different banking institution. As in *Rockwell*, BANA's "change-in-terms notice was . . . an invitation to enter into a new relationship governed by the modified terms. Plaintiff accepted this invitation by failing to opt out and by continuing to use [her] card." 2011 WL 2292353 at *13. Nothing about this process of offer and acceptance is illusory. In addition, as in *Rockwell*, plaintiff has not alleged facts showing that the Credit Card Agreement is "so one-sided as to be oppressive," *id.* at *11, and plaintiff's claim of unconscionability fails, regardless of whether Delaware or Washington law is applied. *See id.*; *see also Nelson v. McGoldrick*, 127 Wn.2d 124, 896 P.2d 1258 (1995) (indicating that unconscionability is a question of law for the Court and that Washington recognizes two types: (i) substantive unconscionability, involving a clause or term in a contract that is alleged to be "one-sided or overly harsh"; and (ii) procedural unconscionability, relating to an impropriety during the formation of the contract).

The Court is also persuaded that plaintiff's breach of covenant of good faith and fair dealing claim should be dismissed.  The Court recognizes that the *Rockwell* decision reached a different result.  Unlike in *Rockwell*, however, plaintiff in this case has not alleged that BANA's reason for raising the APR was concern for its profitability.  *See id.* at *11.  In its motion to dismiss, BANA suggests that plaintiff's APR was increased and her account was eventually not renewed based on an unfavorable annual credit report, past delinquencies, and the high proportions of balances to credit limits on plaintiff's revolving credit accounts.  The Court need not and does not make any ruling concerning the reason why plaintiff's APR was modified or her account closed, but the Court does conclude that plaintiff has not pleaded facts to support her claim that BANA exercised its contractual right to alter the APR in bad faith.  Because the Court cannot conclude that plaintiff could not possibly allege the requisite facts, the Court must permit plaintiff an opportunity to amend her claim for breach of the implied covenant of good faith and fair dealing.  Thus, BANA's motion to dismiss such claim is GRANTED in part, plaintiff's fourth cause of action is DISMISSED without prejudice, and plaintiff is GRANTED leave to amend her fourth cause of action within thirty-five (35) days of the date of this Order.

        **b.**    **Canceling Credit Card**

In alleging that BANA breached the Credit Card Agreement by canceling plaintiff's credit card without notice, plaintiff has pleaded only non-economical damages, namely embarrassment, extreme anxiety, and emotional distress.  Such relief, however, is not available for breach of contract under either Washington or Delaware law.  *Gaglidari*

*v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 440-48, 815 P.2d 1362 (1991); see *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 444-45 (Del. 1996).  Whether plaintiff can allege recoverable damages is unknown.  BANA's motion to dismiss this claim is therefore GRANTED in part, plaintiff's eighth cause of action is DISMISSED without prejudice, and plaintiff is GRANTED leave to amend her eighth cause of action within thirty-five (35) days of the date of this Order.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendant Bank of America, N.A.'s motion to dismiss, docket no. 24, is GRANTED in part and DENIED in part;

(2) Plaintiff's First, Second, Third, Fifth, Sixth, and Seventh Causes of Action are DISMISSED with prejudice;

(3) Plaintiff's Fourth and Eighth Causes of Action are DISMISSED without prejudice;

(4) Plaintiff may amend her Fourth and Eighth Causes of Action by electronically filing an amended complaint within thirty-five (35) days of the date of this Order;

(5) If no amended complaint is timely filed, this action will be dismissed with prejudice, and with costs to be taxed against plaintiff pursuant to Local Rule CR 54(d); and

(6) The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

ORDER - 13

1  IT IS SO ORDERED.

2  Dated this 2nd day of October, 2012.

3

4  /s/ Thomas S. Zilly

5  Thomas S. Zilly
   United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 14